UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
--------------------------------------------------------------- x
GCIU-EMPLOYER RETIREMENT FUND AND :
BOARD OF TRUSTEES OF THE GCIU- :
EMPLOYER RETIREMENT FUND, :
:
                        Plaintiff, , : Civil Action No.
:
              vs. :
:
B&B PRINTING, LLC d/b/a ABCO PRINTING :
AND JOHN DOE COMPANIES 1-99, :
:
                    Defendants. :
--------------------------------------------------------------- x

## COMPLAINT

Plaintiffs GCIU Employer Retirement Fund ("Fund") and the Board of Trustees of the GCIU-Employer Retirement Fund ("Board of Trustees"), by their undersigned attorneys, Cohen, Weiss and Simon LLP, for their complaint against defendants B&B Printing, LLC d/b/a ABCO Printing ("B&B") and John Does Companies 1-99, allege as follows:

### Introduction

1. This is an action by the Fund and the Trustees, as trustees and fiduciaries of the Fund, a multiemployer pension plan, (i) for injunctive and monetary relief to remit unpaid contributions owed to the Fund pursuant to a completed audits of the Employer's books and records for the periods April 1, 2014 to November 30, 2016 along with interest, liquidated damages, audit fees, attorney's fees and costs incurred from B&B Printing, LLC d/b/a Abco Printing ("B&B"); (ii) and to collect $236,942.00 in withdrawal liability principal, as well as statutory interest, liquidated damages, and attorney's fees and costs, from B&B and John Doe Companies 1-99.

**JURISDICTION AND VENUE**

2. The Court has jurisdiction over this action pursuant to Sections 502(e)(1), 502(f), and 4301(c) of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. §§ 185(a), 1132(a)(3), 1132 (e)(1), 1132(f), 1145 and 1451(c), and 28 U.S.C. § 1331.

3. Venue lies in this district under Sections 502(e)(2) and 4301(d) of ERISA, 29 U.S.C. §§ 1132(e)(2) and 1451(d), where the defendants reside, do business, or may be found.

**THE PARTIES**

4. Plaintiffs are the Trustees and fiduciaries of the Fund as defined in Section 3(21)(A) of ERISA, 29 U.S.C. § 1002(21)(A) (the "Trustees").

5. The Fund is a multiemployer pension plan within the meaning of Section 3(37) of ERISA, 29 U.S.C. § 1002(37), and an "employee pension benefit plan" within the meaning of Section 3(2)(A) of ERISA, 29 U.S.C. § 1002(2)(A), that is subject to the withdrawal liability provisions of ERISA.

6. At all times relevant to this Complaint, the Fund has done business at 1200 Wilshire Boulevard, Fifth Floor, Los Angeles, California 90017-1906.

7. The Fund is jointly administered by a Board of Trustees, comprised of an equal number of labor and management representatives in accordance with Section 302(c)(5) of the Labor Management Relations Act of 1947 (the "LMRA"), 29 U.S.C. § 186(c)(5).

8. The Fund is governed by a trust agreement (the "Trust Agreement").

9. The Trust Agreement sets forth "terms of the plan," establishing that the Trustees are fiduciaries responsible for administering the Fund and that the Fund is the beneficiary of the Trust Agreement terms.

10. Accordingly, the Trustees have legal right to bring suit on behalf of the Fund and its participants and beneficiaries under Sections 502, 515, and 4301(a)(1) of ERISA, 29 U.S.C. §§ 1132(a)(3), 1145, and 1451(a)(1).

11. B&B was a party to a collective bargaining agreement with GCC/IBT Local 612M (the "Union"), pursuant to which B&B was required to make contributions to the Fund.

12. The collective bargaining agreement and the Trust Agreement set forth the "terms of the plan" within the meaning of 29 U.S.C. §1132(a)(3) and 29 U.S.C. §1145.

13. Upon information and belief, B&B is, and at all times relevant to this action has been, a New Jersey corporation, which maintains its principal place of business at 115 North Gold Drive, Trenton, New Jersey 08691.

14. B&B is, and at all times relevant to this action has been, an "employer" within the meaning of Section 3(5) of ERISA, 29 U.S.C. §1002(5), and the Trust Agreement.

## FACTUAL BASIS FOR CLAIM

**The Collective Bargaining Agreement, the Trust**
**Agreement and the Obligation To Contribute to the Funds**

15. B&B was a party to a collective bargaining agreement, the Local 612M Memorandum of Agreement (hereinafter referred to as the "CBA") with the Union, which by its terms ran from May 1, 2014 through April 30, 2018.

16. The CBA required B&B to remit contributions to the Fund on behalf of its employees who are covered by its terms, at specified rates for each hour of covered employment.

17. Along with the contributions, B&B is also required to submit remittance reports to the Fund.

18. The remittance reports provide B&B's statement of the employees who performed work covered by the CBA and the number of hours each such employee worked in covered employment.

19. Pursuant to the Trust Agreement, all contributions are due by the fifteenth (15) day of the month following the month in which the contributions accrue.

20. Contributions are considered delinquent if:

(a) [the Employer] fails to submit a contribution reporting form, and the contributions detailed therein, by the close of business on the due date; or

(b) Fails to submit contributions on behalf of all the employees for whom contributions are required under the applicable collective bargaining agreement, subscription agreement, or participation agreement, or

(c) Fails to properly compute the contributions according to the required contribution formula specified in the applicable collective bargaining agreement, subscription agreement or participation agreement.

21. Furthermore, the Trust Agreement provides that if the Employer fails to remit contributions by the date due, the Employer is liable to the Funds for:

(a) The delinquent contributions and liquidated damages of ten percent (10%) of the amount of the contributions which are owed, or twenty five dollars ($25), whichever is greater.

(b) If [B&B's] failure to pay contributions is referred to legal counsel, in addition to the above, [B&B] is liable for reasonable attorney fees and for reasonable costs incurred in the collection process, including court fees, audit fees, etc.  In addition, delinquent contributions shall bear interest at the rate of ten percent (10%) per annum until paid, computed from the contribution due date.

(c) Finally, if a judgment is entered, [B&B] shall be liable for additional liquidated damages of ten percent (10%) of the amount of the contributions which are owed, making a total of twenty percent (20%).

22. The Trust Agreement provides the Fund the right to audit B&B's books and records so as to determine the amounts of contributions due pursuant to the CBA.

**The Audits**

23. An examination of the Employer's books and records for the period from July 1, 2013 through March 31, 2014 ("Audit No. 1") reflects that on behalf of certain employees B&B owed $6,194.50 in audit shortages, surcharge/rehabilitation plan shortages, overpaid contributions, surcharge/rehabilitation plan overages, audit costs, and interest (calculated to a date certain, with additional interest to become due thereafter through the date of payment).

24. On or about November 4, 2014, B&B remitted $3,255.46 to cover in part, the Audit No. 1 shortage and related fees.

25. B&B failed to remit audit costs of $2,939.04.

26. On or about March 20, 2017, the Fund denied B&B's request to waive audit fees and demanded immediate payment of the Audit No. 1 audit balance.

27. To date, the Audit No. 1 audit cost balance of $2,940.04, plus additional damages, remains unpaid.

28. An examination of the Employer's books and records for the period from April 1, 2014 to February 29, 2016 ("Audit No. 2") reflects that on behalf of certain employees B&B owed $1,938.37 in audit shortages, surcharge/rehabilitation plan shortages, audit costs, and interest (calculated to a date certain, with additional interest to become due thereafter through the date of payment).

29. On May 29, 2018, the Fund sent a "Final Notice" Letter to B&B requesting the payment of $1,938.37 for Audit No. 2 within fifteen (15) days of receipt.

30. Upon B&B's failure to remit payment, the Fund issued another "Final Notice" Letter to the Employer on June 28, 2018, requesting the payment of $1,938.37 for Audit No. 2 within fifteen (15) days.

31. The June 28, 2018 Final Notice Letter was sent to a forwarding address provided by the United States Postal Service upon return of the May 29, 2018 Final Notice Letter.

32. To date, the Audit No. 2 balance of $1,938.37 remains unpaid.

33. An examination of B&B's books and records for the period from March 1, 2016 to November 30, 2016 (the "Audit No. 3") reflects that on behalf of certain employees the Employer owed $397.55 in audit shortages, surcharge/rehabilitation plan shortages, audit costs, and interest (calculated to a date certain, with additional interest to become due thereafter through the date of payment).

34. On May 30, 2018, the Fund sent a "Final Notice" Letter to B&B requesting the payment of $397.55 for Audit No. 3 within fifteen (15) days of receipt.

35. Upon B&B's failure to remit payment, the Fund issued another "Final Notice" Letter to the Employer on June 29, 2018, requesting the payment of $397.55 for Audit No. 3 within fifteen (15) days.

36. The June 28, 2018 Final Notice Letter was sent to a forwarding address provided by the United States Postal Service upon return of the May 29, 2018 Final Notice Letter.

37. To date, the Audit No. 3 balance of $397.55, plus additional damages remains unpaid.

**Other Amounts**

38. On information and belief, additional audit shortages, surcharge and rehabilitation plan shortages, interest, liquidated damages, audit fees, and attorney's fees and costs will continue to become due and owing by B&B to the Fund during the pendency of this action.

**The Withdrawal**

39. On or around December 2016, B&B permanently ceased all operations for which contributions were owed to the Fund and/or permanently ceased to have an obligation to contribute to the Fund, thereby withdrawing from the Fund within the meaning of Section 4203(a) of ERISA, 29 U.S.C. § 1383(a).

40. As a result of B&B's withdrawal from the Fund, B&B became liable to the Fund for a withdrawal liability principal in the amount of $236,942.00, pursuant to Section 4201 of ERISA, 29 U.S.C. § 1381.

41. After determining the amount of withdrawal liability incurred by B&B, the Fund sent B&B a letter dated March 12, 2018 (the "Notice and Demand"). In the Notice and Demand, the Fund (a) informed B&B that $236,942 amount of withdrawal liability principal and of the schedule for withdrawal liability payments and (b) demanded payment in accordance with the schedule as required by Sections 4202 and 4219(b)(1) of ERISA, 29 U.S.C. §§ 1382 and 1399(b)(1).

42. Pursuant to Section 4219(c) of ERISA, 29 U.S.C. § 1399(c), and as provided in the Notice and Demand, B&B was notified that it must either remit payment of (a) $64,737 within 60 days (the present value of the withdrawal liability principal due) or (b) pay the withdrawal liability principal in monthly installment payments. The lump sum or first monthly installment payment was due within sixty (60) days from the date on the letter.

43. After failing to receive the lump sum or first monthly payment pursuant to the First Notice and Demand, the Fund sent a letter on June 11, 2018 (the "Demand for Cure").

44. In the Demand for Cure, the Fund informed B&B that "if payment in accordance with the schedule is not made in full within 60 days" of the receipt of the letter, B&B will be in default of the withdrawal liability assessment.

45. The Demand for Cure further explained that if B&B defaulted on its payment, the "entire assessment and interest shall be immediately due."

46. Despite receipt of the Notice and Demand and the Demand for Cure, B&B has failed to make any withdrawal liability payments, request review of the withdrawal liability assessment, or initiate arbitration of the withdrawal liability assessment.

**The Controlled Group**

47. Section 4001(b)(1) of ERISA provides in relevant part that "all employees of trades or businesses (whether or not incorporated) which are under common control shall be treated as employed by a single employer and all such trades and businesses as a single employer." 29 U.S.C. § 1301(b)(1).

48. In determining whether entities are considered to be under "common control," ERISA and the regulations promulgated thereunder use the definition of "trades or businesses under common control" found in the Internal Revenue Code. 29 U.S.C. § 1301(b)(1); 29 C.F.R. § 4001.3(a)(1).

49. Regulations issued under the Internal Revenue Code provide that a "brother-sister group of trades or businesses under common control" is one of the types of "trades or businesses under common control." 26 C.F.R. 1.414(c)-(2)(a). Two or more organizations constitute a "brother-sister group of trades or businesses under common control" if (i) the same five or fewer individuals own a controlling interest in each organization, and (ii) taking into account the ownership of each such person only to the extent such ownership is identical with respect to each such organization, such persons are in effective control of each organization. 26 C.F.R. 1.414(c)-(2)(c).

50. A "controlling interest" in an organization includes, in the case of a sole proprietorship, ownership of such sole proprietorship, and in the case of a corporation or

partnership, ownership of at least 80 percent of the total value of shares of all classes of stock of the corporation or at least 80 percent of the profits interests or capital interests of the partnership. 26 C.F.R. 1.414(c)-2(b)(2)(i).

51. "Effective control" of an organization includes, in the case of a sole proprietorship, ownership of the sole proprietorship by one person, and in the case of a corporation or partnership, ownership of at least 50 percent of the total value of shares of all classes of stock of the corporation or at least 50 percent of the profits interests or capital interests of the partnership. 26 C.F.R. 1.414(c)-(2)(c)(2)(i).

52. Upon information and belief, Reuben Bibi has owned and/or controlled B&B's shares of stock as of the December 2016 withdrawal date.

53. Upon information and belief, Morris Bildiricci has owned and/or controlled B&B's shares of stock as of the December 2016 withdrawal date.

54. Upon information and belief, Reuben Bibi and/or Morris Bildiricci own and/or control shares of stock in various companies, including, but potentially not limited to: (a) Wolf Fine Jewelers BS LLC; (b) E. Josef, Inc.; (c) Concepts NYC, Inc.; and (d) Check-O-Lite International.

55. At this time, it is unclear whether any and/or all of these four companies, and/or other companies, fall within B&B's controlled group.

56. Accordingly, defendants John Doe Companies 1-99 are fictitious defendants representing any other trade or business under common control with B&B.

## **FIRST CAUSE OF ACTION**

57. Plaintiffs repeat and reallege the allegations of the preceding paragraphs as if fully set forth herein.

58. Section 515 of ERISA, 29 U.S.C. §1145, requires "[e]very employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement . . . [to] make such contributions in accordance with the terms and conditions of such plan or such agreement."

59. Section 502(a)(3) of ERISA, 29 U.S.C. §1132(a)(3), provides that a civil action may be brought "by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violation or (ii) to enforce any provision of this title or the terms of the plan."

60. Section 502(g)(2) of ERISA, 29 U.S.C. §1132(g)(2), mandates that, "[i]n any action brought by a fiduciary on behalf of a Plan to enforce Section 515 in which a judgment in favor of the plan is awarded, the court shall award the plan –

    (a) the unpaid contributions,

    (b) interest on the unpaid contributions,

    (c) an amount equal to the greater of –

    (d) interest on the unpaid contributions, or

    (e) liquidated damages … in an amount not in excess of 20 percent of the [unpaid contributions],

    (f) reasonable attorney's fees and costs of the action, to be paid by the defendant, and

    (g) such other legal or equitable relief as the court deems appropriate …"

61. Section 502(g)(1) of ERISA, 29 U.S.C. §1132 (g)(1), further provides that "[i]n any action under this subchapter [other than one described in 502(g)(2)] by a participant,

beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action…."

62. The Trust Agreement provides that if the Employer fails to remit contributions by the date due, the Employer is liable to the Funds for:

(a) The delinquent contributions and liquidated damages of ten percent (10%) of the amount of the contributions which are owed, or twenty five dollars ($25), whichever is greater.

(b) If [B&B's] failure to pay contributions is referred to legal counsel, in addition to the above, [B&B] is liable for reasonable attorney fees and for reasonable costs incurred in the collection process, including court fees, audit fees, etc. In addition, delinquent contributions shall bear interest at the rate of ten percent (10%) per annum until paid, computed from the contribution due date.

(c) Finally, if a judgment is entered, [B&B] shall be liable for additional liquidated damages of ten percent (10%) of the amount of the contributions which are owed, making a total of twenty percent (20%).

63. By virtue of B&B's failure to remit the audit balances to the Fund constitutes a failure to make contributions in accordance with the terms of the plan documents of the Funds in violation of Sections 502 and 515 of ERISA, 29 U.S.C. §§1132 and 1145, giving rise to an action under Section 502(a)(3) of ERISA, 29 U.S.C. §1132(a)(3).

64. By virtue of its failure to pay the audit balances, despite demand, B&B is required to pay audit shortages, surcharge/rehabilitation plan shortages, interest, liquidated damages, audit fees, and attorney's fees, and costs in accordance with the Trust Agreement and Section 502(g) of ERISA, 29 U.S.C. § 1132(g).

## SECOND CAUSE OF ACTION

65. Plaintiffs repeat and reallege the allegations of the preceding paragraphs as if fully set forth herein.

66. By reason of their failure to make withdrawal liability payments, B&B and John Doe Companies 1-99 are jointly and severally in default within the meaning of ERISA Section 4219(c)(5)(A), 29 U.S.C. § 1399(c)(5)(A), and the Fund is entitled to immediate payment of the total amount of the withdrawal liability principal in the amount of $223,754, plus accrued interest, liquidated damages, and attorney's fees and costs pursuant to ERISA Sections 502(g)(2)(A), 502(g)(2)(B), 502(g)(2)(C), 502(g)(2)(D), and 4301(b), 29 U.S.C. §§ 1132(g)(2)(A), 1132(g)(2)(B), 1132(g)(2)(C), 1132(g)(2)(D), and 1451(b), and the Trust Agreement.

**PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiffs pray that the Court enter judgment as follows:

1. Ordering B &B to pay (a) any delinquencies identified by the audit; (b) liquidated damages; (c) interest on the unpaid contributions (d) audit costs; and (e) attorney's fees and costs;

2. Declaring that John Doe Companies 1-99 were trades or businesses under common control with B&B on the Date of Withdrawal;

3. Ordering the defendants to identify all trades or businesses under common control with B&B;

4. Ordering defendants B&B and John Doe Companies 1-99, collectively and individually, to pay the Fund the sum of $236,942.00 for withdrawal liability principal pursuant to ERISA Sections 502(g)(2)(A), and 4301(b), 29 U.S.C. §§ 1132(g)(2)(A), and 1451(b);

5. Ordering defendants B&B and John Doe Companies 1-99, collectively and individually, to pay the Fund (a) interest on the withdrawal liability, (b) liquidated damages on the withdrawal liability; and (c) attorney's fees and costs on the withdrawal liability, pursuant to

ERISA Sections 502(g)(2)(B), and 4301(b), 29 U.S.C. §§ 1132(g)(2)(B), and 1451(b), and the Trust Agreement;

      6.    Awarding plaintiffs reasonable attorney's fees and costs of this action pursuant to Sections 502(g)(1) and (g)(2) of ERISA, 29 U.S.C. §§1132(g)(1) and (g)(2), and the Trust Agreement; and

      7.    Granting such other and further relief as the Court deems appropriate

Dated: New York, New York
       October 22, 2018

                             Respectfully submitted,

                             */s/ Michael S. Adler*

                             Michael S. Adler
                             Erika M. Medina
                             COHEN, WEISS AND SIMON LLP
                             900 Third Avenue, Suite 2100
                             New York, NY 10022-4869
                             212-563-4100

                             Counsel for Plaintiffs